UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TWO PLUS TWO PUBLISHING, LLC,

    Plaintiff,

v.

RUSSELL AARON BOYD, *et al*.,

    Defendants.

Case No. 2:09-CV-02318-KJD-VCF

**ORDER**

    Presently before the Court is Plaintiff's Motion for Partial Summary Judgment (#20/21). Defendants filed a response in opposition (#22) to which Plaintiff replied (#23).

I.  Facts

    Plaintiff Two Plus Two Publishing, LLC ("Plaintiff") is the owner of Two Plus Two Publishing Company and the sole member of Two Plus Two Interactive, LLC which is the owner and operator of Two Plus Two Forums online forums and poker information community ("the Forums"). Plaintiff has continuously used the trademarks TWO PLUS TWO, 2+2, 2+2=4, TWO PLUS TWO PUBLISHING, and TWO PLUS TWO FORUMS ("the Marks") in connection and advertising and promoting its Forums and publications. The Marks are among the most recognized and respected names in poker theory and gaming related publishing and internet communities. Consumers of Plaintiff's publications buy substantial numbers of books through its website and Forums.

On July 14, 2004, Defendant registered the domain name <twoplustwopoker.com> to an active internet site providing information and links to poker strategy and various online gaming services that compete with those provided by Plaintiff.[1] On December 9, 2009, Plaintiff filed the present complaint against Defendant for violations of the Anti-Cybersquatting Protection Act ("ACPA"), trademark infringement, unfair competition, deceptive trade practices and intentional interference with prospective economic advantage.  On January 12, 2010, Defendant filed an answer and counterclaims for defamation, defamation per se, intentional infliction of emotional distress, intentional interference with prospective economic advantage and abuse of process.  On September 30, 2010, the Court denied Defendant's motion to dismiss and granted Plaintiff's motion to dismiss Defendant's counterclaims.  Now Plaintiff seeks summary judgment on its claim for violation of the ACPA.[2]

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[1] Defendant Russell Aaron Boyd has already admitted that Defendant <jacknames.com> is a d/b/a or alter ego that represents himself as an individual.

[2] In addition to moving for summary judgment on the registration of the domain name <twoplustwopoker.com>, Plaintiff has also moved for summary judgment on its assertion that Plaintiff's registration of <twopluspoker.com> violated the ACPA.  However, Plaintiff did not plead this violation in its complaint, nor timely move to include this registration.  Even if the Court were to consider the "twopluspoker" registration, it would find that genuine issues of fact prevented the Court from granting summary judgment.

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

III.  Analysis

The ACPA, which Congress incorporated into the Lanham Act in 1999, sets forth the elements of a cybersquatting claim. The Anti–Cybersquatting Consumer Protection Act establishes civil liability where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted "with bad faith intent to profit from that mark." DSPT Intern., Inc. v. Nahum, 624 F.3d 1213, 1218 -1219 (9th Cir. 2010).  The ACPA protects both federally-registered marks as well as unregistered marks. DaimlerChrysler v. The Net Inc., 388 F.3d

1  201, 205 (6th Cir. 2004)(citing Two Pesos Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)); see
2  also 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:78 (4th ed.
3  2007).
4       Defendant opposes Plaintiff's motion for summary judgment asserting that questions of fact
5  on the following issues require resolution by a trier of fact: (1) whether Plaintiff's "TWO PLUS
6  TWO" mark was famous or distinctive and whether <twoplustwopoker.com> is confusingly similar
7  or identical to the Marks; (2) whether Defendant had a bad faith intent to profit from the Marks; and
8  (3) whether Defendant had actual notice of registration of the Marks under 15 U.S.C. § 1111.  The
9  Court finds that Defendant has failed to raise any genuine issues of material fact that prevent the
10 Court from granting Plaintiff's motion for summary judgment on its claim arising under ACPA.
11      A.  Distinctiveness and Confusing Similarity
12      First, Defendant has offered no evidence that the TWO PLUS TWO mark was not famous or
13 distinctive in the poker and gaming strategy market and in the on-line forum market for poker
14 discussion and gaming strategy.  Defendant has done nothing to dispute that Two Plus Two
15 publishing has sold over two million books, that its online forums have 250,000 unique members, or
16 that Plaintiff's website garners one million unique hits per month.  Particularly, Defendant does not
17 dispute that Two Plus Two occupies a unique niche, being known primarily for its expertise in poker
18 and gaming strategy.  Though Defendant asserts that distinctiveness is a question of fact that must be
19 resolved at trial, the Marks at issue in this case are arbitrary or fanciful and, therefore, inherently
20 distinctive. Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210-211 (2000); Lahoti v.
21 Vericheck, Inc., 586 F.3d 1190, 1197 (9th Cir. 2009); Yellow Cab Co. of Sacramento v. Yellow Cab
22 Co. of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005).  Furthermore, Defendant cannot rest on his
23 "mere disagreement" with the idea that the Marks are distinctive or his "bald assertion" that it is not
24 confusingly similar or identical in order to raise a genuine issue of material fact.  See Harper v.
25 Wallingford, 877 F.2d 728, 731 (9th Cir. 1989); Carnivale v. Staub Design, LLC, 700 F. Supp.2d
26 660, 667 (D. Del. 2010)(bare assertions, conclusory allegations or suspicions are insufficient to

4

contest a plaintiff's assertion of distinctiveness)(citing Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d. Cir. 2005)).

Additionally, it is clear that <twoplustwopoker.com> is confusingly similar or identical to the Marks. Adding the work "poker" to the domain name actually makes the confusion worse, because it clearly relates the domain name to the industry in which Two Plus Two is distinct. Furthermore, Defendant asserts that the Marks are not distinct, because others had used "Two Plus Two" in other domain names and had registered trademarks containing "Two Plus Two" and used them for diverse products such as cookies. However, no reasonable finder of fact could conclude that these goods, such as cookies, would likely be confused with Plaintiff's use of the Marks for its poker and gaming related publications. See DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1221-22 (9th Cir. 2010)(holding that use of "EQ" mark used for men's shirt line unlikely to be confused with online publications, engine cylinder heads, bicycles, and even equestrian clothing line). Therefore, the Court finds that Plaintiff's Marks are distinctive and Defendant's use of the domain <twoplustwopoker.com> is undisputedly similarly confusing or identical to Plaintiff's Marks.

B. Bad Faith Intent

Next, the Court finds that there is no question of fact that Defendant acted in bad faith. Plaintiff must prove that Defendant acted with a bad faith intent to profit from Plaintiff's Marks. See 15 U.S.C. § 1125(d)(1). Section 43(d)(1)(B)(i) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(B)(I), provides a non-exhaustive list of nine factors for determining if a plaintiff has shown the requisite bad faith. The factors are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

5

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C.A. § 1125(d)(1)(B)(I).

Seven of the nine factors heavily favor the Court's finding that Defendant acted in bad faith. Only the seventh and eighth factors favor Defendant or have questions of fact that cannot be resolved by the Court.[3] First, Defendant has no intellectual property rights in the domain name, and in fact, capitalized on Two Plus Two's known association with poker in order to increase the internet traffic diverted through the domain name. Second, the domain name incorporates the entirety of the Mark, "Two Plus Two." Third, Defendant admits that he had no bona fide or legitimate commercial purpose for registering the domain name other than to increase pay-per-click revenue generated through Adsense or other revenue generating parked sites. This finding is heightened by Defendant's

---

[3] Defendant disputes that he provided false and misleading contact information when applying for registration of the domain names. His use of jacknames.com does not appear to be significantly misleading. Furthermore, though Defendant admits to registering thousands of domain names and offering them for sale, no specific information has been made available to the Court demonstrating that these registrations infringed the intellectual property rights of others. Given the overwhelming weight of the other factors favoring a finding of bad faith, these questions of fact would have little influence in the Court's determination if they were resolved in Defendant's favor.

admission that he let the registration expire because it was not profitable enough. Fourth, Defendant admits habitually registering thousands of domain names for advertising revenue and re-sale profit.

Fifth, the express purpose of registering the sites, as admitted by Defendant, was to include on them links of websites offering similar or identical goods and services to those of Plaintiff. The inclusion of the word "poker" in the domain only heightened the likelihood of confusion and created the possibility of harm to Plaintiff's goodwill. Sixth, Defendant expressly offered the domain for sale or transfer for several years before letting the domain name expire. Despite Defendant's belated offer to transfer the domain name if Plaintiff paid for the fees, this only happened after Plaintiff began asserting its rights. Therefore, there is no question of fact regarding Defendant's effort to profit from the registration.

Finally, the ninth factor heavily favors a finding of bad faith, because the Mark incorporated into Defendant's domain name registration was distinctive and famous. Though Defendant asserts that this is a question of fact, he has done nothing to dispute the facts as already ruled upon by the Court. The undisputed fact that Two Plus Two's internet website receives over one million unique hits per month bolsters this finding.

C. Notice of Registration, 15 U.S.C. § 1111

Defendant asserts that Plaintiff may not recover damages or profits unless Plaintiff first gave notice to Defendant of registration of the Marks as required by 15 U.S.C. § 1111. However, the section cited by Defendant only applies to trademark infringement analysis under 15 U.S.C. § 1114, *et. al*. There is no similar notice language for a false designation origin claim, including cybersquatting, under 15 U.S.C. §1125. However, if even if § 1111 applied, Defendant was put on notice of Two Plus Two's federally protected marks on November 25, 2008. Boyd became the registered user "Dutchalicious" at the <twoplustwo.com> online forums. Before his membership was accepted and activated, he was required to contractually agree to Two Plus Two's terms and conditions. Those terms and conditions notified Boyd of Plaintiff's intellectual property rights in the

1 Marks. Boyd expressly agreed not to display or use the Marks in any manner. Therefore, even if 15
2 U.S.C. § 1111 applies, Boyd was adequately notified of Plaintiff's rights.

### D. Summary Judgment and Damages

Accordingly, the Court finds that no genuine issue of material fact prevents it from granting Plaintiff's motion for summary judgment. Plaintiff has made an undisputed showing that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted "with bad faith intent to profit from that mark." DSPT Intern., 624 F.3d at 1218. Accordingly, Plaintiff's motion for summary judgment is granted.

A plaintiff asserting an ACPA claim "may elect, at any time before judgment is rendered by the trial court, to recover, instead of actual damages and profits, and award of statutory damages" of up to $100,000.00 per infringing domain name. 15 U.S.C. § 1117(d). Here, Plaintiff has made such an election and urges the Court to award the maximum statutory amount. Given the Court's finding that Defendant acted with a bad faith intent to profit, but given the scant evidence on Defendant's success, the Court awards statutory damages in the amount of $25,000.00. Additionally, pursuant to 15 U.S.C. § 1117(a), the Court finds that because Defendant's conduct was willfull it qualifies as "exceptional" and awards attorney's fees and costs to Plaintiff in the amount of $33,985.45. See Lahoti v. Vericheck, Inc., 636 F.3d 501, 511 (9th Cir. 2011).

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (#20/21) is **GRANTED.**

DATED this 1st day of March 2012.

_____
Kent J. Dawson
United States District Judge